**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Omar Herman BACCA–BELTRAN,
Defendant-Appellant.**

**No. 82–6161.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 20, 1984.

Opinion on Granting of Rehearing En
Banc Dec. 18, 1984.

Theodore Sakowitz, Federal Public Defender, Gary S. Pont, Donna R. Rougeux, Asst. Federal Public Defenders, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Asst. U.S. Atty., Patricia J. Kenney, Sp. Asst. U.S. Atty., Gregory W. Kehoe, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, TJO-FLAT and HENDERSON, Circuit Judges.

GODBOLD, Chief Judge:

 This case involves the warrantless search of an individual departing the United States. The search discovered over $5,000 in currency, and the defendant was charged with currency reporting violations and with making false statements to customs officials. The currency reporting statute, former 31 U.S.C. §§ 1101, 1105 (1976) (recodified at 31 U.S.C.A. §§ 5316, 5317 (1983)), requires that probable cause and a warrant exist before searches for violations can occur. This case is controlled by our decision in a companion case raising identical issues, *U.S. v. Chemaly*, 741 F.2d 1346 (11th Cir.1984). As in *Chemaly* we hold that the border exception does not relieve the service of the statute's warrant requirement, that the defendant did not consent to the search, and that the convictions on both counts must be reversed because of the illegal search.

Bacca-Beltran was at Miami International Airport waiting to board Eastern Airlines flight 19 to Bogota, Colombia. Four customs agents were working at the gate.

At the entrance to the jetway were posters explaining the currency reporting requirements for people leaving the country, former 31 U.S.C. § 1101 (1976) (recodified at 31 U.S.C.A. § 5316 (1983)). One of the customs agents, Medellin, made an announcement in English and Spanish about the currency reporting law. Agent Gleason, who stood next to Medellin during the announcement, held the reporting forms referred to in the announcement.

After the announcement, Gleason, still holding the reporting forms, stationed himself approximately four to five feet from the passenger waiting area. The other three agents all moved to the end of the jetway next to the aircraft entrance. All the agents wore their badges.

When Bacca-Beltran approached Gleason, the agent asked (in Spanish) if Bacca-Beltran was carrying more than $5,000. Bacca-Beltran replied in the negative and continued down the jetway.

When Bacca-Beltran approached the other agents, one of them, Riggs, took off his badge, showed it to defendant, and asked to see his passport. Riggs then took defendant's passport and ticket. Bacca-Bel-tran was then moved to the side of the jetway so that the other passengers could continue to board. The agents testified that they stopped Bacca-Beltran because he was casually dressed, wore an expensive looking jacket, and "looked like a person you could easily pick out of a crowd."

Medellin then repeated the information contained in his prior announcement of the currency laws and asked Bacca-Beltran if he was carrying more than $5,000. Appellant again answered in the negative. Medellin then asked Bacca-Beltran how much he was carrying, and he said approximately $200. Upon request of the agents, Bacca-Beltran then emptied his pockets and produced approximately $150.

The agents next inquired if they could search appellant's shopping bag. When he agreed, Riggs checked the bag and found mainly food items. Riggs found a sealed wafer box that felt rigid, opened it, and discovered U.S. currency that appeared to be in excess of $5,000.

The agents then informed defendant that he would be detained and accompanied him to the customs office. There he was advised of his constitutional rights. After waiving his rights, Bacca-Beltran stated that the money was not his but belonged to an unknown Colombian who gave it to defendant to take back to Colombia. Riggs then conducted a pat-down search of Bacca-Beltran that turned up an additional $15,060. Defendant then changed his story and stated that the money was given to him by a relative to take back to Colombia. He was then formally placed under arrest. The district court denied Bacca-Beltran's motion to suppress the money and statements from the search. Bacca-Beltran was convicted of making false statements to a customs officer in violation of 18 U.S.C. § 1001 and of failing to report his transportation of more than $5,000 in U.S. currency to places outside the United States in violation of former 31 U.S.C. § 1101 (1976) (recodified at 31 U.S.C.A. § 5316 (1983)).

This case is controlled by our decision in the companion case of *U.S. v. Chemaly*, 741 F.2d 1346 (11th Cir.1984). The border exception does not relieve the customs service of the warrant requirement of § 1105. *See Chemaly*, 741 F.2d at 1351. Similarly, the retention of Bacca-Beltran's ticket and passport, the removal of him from the stream of passengers, and the failure to

advise him of his right to refuse consent to the search rendered his consent involuntary. *See id.* at 1353. The district court's contrary finding is clearly erroneous.

The currency discovered and statements made during and after the illegal search must be excluded as the fruit of an illegal search. The conviction for violation of § 1101 must be reversed. The conviction for violation of 18 U.S.C. § 1001 must be reversed as well because the illegally seized currency and statements by Bacca-Beltran, which were the fruit of the illegal search, were necessary to establish the falsity of the statement under § 1001.

REVERSED.

TJOFLAT, Circuit Judge, dissenting:

As the majority notes, this case raises issues identical to those in *United States v. Chemaly*, 741 F.2d 1346, (11th Cir.1984). In contrast to *Chemaly*, however, no probable cause existed to arrest Bacca-Beltran prior to the time Customs searched him. Parts I, II and V of my dissent in *Chemaly* accordingly do not apply in this case. For the reasons expressed in parts III and IV of my dissent in *Chemaly*, however, I would find suppression of the currency seized from Bacca-Beltran to be an inappropriate remedy. I would thus affirm his convictions on both counts.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.